UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X
                                        :
WILFREDO VALEZ,                         :
                                        :
                    Plaintiff,          :        08 Civ. 3875 (DLC)
                                        :
         -v-                            :        OPINION & ORDER
                                        :
THE CITY OF NEW YORK; P.O. GIANPAOL     :
DILISIO, Shield #20918; FRANCESCO       :
TURDO; VIVIAN PECORARO; "JANE DOE" and  :
JOHN DOE" 1-10 Inclusive,               :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiff:
Nkereuwem Umoh
225 Livingston Street, 4th Floor
Brooklyn, NY 11217

For Defendants City of New York and P.O. Dilisio:
Douglas W. Heim
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

     Plaintiff Wilfredo Valez ("Valez" or "plaintiff")[1] brings

this civil rights action against defendants City of New York

---

[1] The plaintiff's last name was given as "Valez" in the original
complaint and as "Velez" in the Amended Complaint.  The City
Defendants use "Velez" throughout their motion papers.  The
spelling in this Opinion reflects that used in the case caption,
which has not been amended.

(the "City") and Police Officer Gianpaol Dilisio ("Dilisio")[2] alleging that Valez was subjected to false arrest and malicious prosecution.  The City and Dilisio (collectively, the "City Defendants") have moved to dismiss Valez's amended complaint through a Rule 12(c) motion for judgment on the pleadings, or in the alternative, through summary judgment.  For the following reasons, the motion for judgment on the pleadings is granted as to Valez's federal claims, and this Court declines to exercise supplemental jurisdiction over the remaining state law claims.

<u>BACKGROUND</u>

The factual background to this case has already been addressed in an Opinion and Order of December 16, 2008, <u>Valez v. City of New York</u>, No. 08 Civ. 3875 (DLC), 2008 WL 5329974 (S.D.N.Y. Dec. 16, 2008) (the "December 16 Opinion"), and an Opinion and Order of October 1, 2009, <u>Valez v. City of New York</u>, No. 08 Civ. 3875 (DLC), 2009 WL 3170098 (S.D.N.Y. Oct. 1, 2009) (the "October 1 Opinion"), familiarity with which is assumed.  Only the facts necessary to a resolution of the pending motion are described here.  These facts, taken from the January 15, 2009 amended complaint (the "Amended Complaint"), are assumed to be true for the purposes of deciding the motion.

---

[2] Dilisio is sued in both his individual and official capacities.

In 2005, Valez rented an apartment from Francesco Turdo and Vivian Pecoraro (the "landlords").  In or about July 2005, the landlords formulated a plot to have Valez arrested in retaliation for suing them in Housing Court and for reporting them for "renting out an illegal apartment."  To carry out the plot, the landlords contacted a police officer, Dilisio, whom they asked to arrest Valez for having marijuana plants in his backyard.[3]  The landlords supplied Dilisio with Valez's name, address, and physical description.  Valez alleges that he did not own or control the marijuana plants in the backyard, and asserts that "all the parties" were aware of that fact.

On July 18, 2005, Dilisio and other police officers approached Valez's home and arrested him for planting marijuana in his yard.  The officers stated that they were "acting on orders of plaintiff's landlord."  Dilisio effected Valez's arrest without conducting any investigation.  Valez maintains that, "but for the acts of [the landlords]," he would not have been arrested by Dilisio.[4]

---

[3] Although the Amended Complaint does not so specify, plaintiff's opposition papers state that his apartment was on the first floor.

[4] In plaintiff's opposition papers, plaintiff takes a different position, arguing that "[i]t is unclear the exact facts that the officers relied on in arresting plaintiff, but upon information and belief the facts may have come from plaintiff's former landlords."  The facts as alleged in the Amended Complaint will be taken as true.

Thereafter, Valez was held for over ten days in police custody.  Valez was charged with possession of illegal drugs, tried, and acquitted of all charges.  Valez maintains that these facts are suggestive of deprivations of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. Valez's Amended Complaint alleges violations of his federal and state constitutional rights by the City Defendants, and seeks compensatory damages, punitive damages, and attorney's fees and costs under 42 U.S.C. §§ 1983 and 1988.[5]

## PROCEDURAL HISTORY

The City Defendants' motion for judgment on the pleadings is now before this Court following a protracted dispute concerning whether this case had been settled.  On October 17, 2008, the City Defendants reported by letter that they had reached a settlement agreement with Valez.  See December 16 Opinion, 2008 WL 5329974, at *1 n.1.  Valez thereafter refused to recognize the purported agreement and continued to press his

---

[5] The Amended Complaint also asserts various claims against the landlords, including claims under 42 U.S.C. § 1983; Article 1, Section 12 of the New York Constitution; and New York common law for intentional infliction of emotional distress, negligent hiring and retention of employees, and negligence.  Valez's § 1983 claims against the landlords were dismissed by the Court's December 16 Opinion, and the Court declined to exercise supplemental jurisdiction over the remaining state law claims. Notwithstanding the December 16 Opinion, Valez again asserts these claims in the Amended Complaint.  These claims may not proceed in this litigation.

claims against the City Defendants by filing an Amended
Complaint on January 15, 2009.  By letter motion of January 29,
2009, the City Defendants moved to enforce the agreement, which
was purportedly entered into with Valez's attorney on or about
October 1, 2008, to settle Valez's claims for the sum of $5,000.
This dispute was then referred to the Honorable Debra Freeman,
United States Magistrate Judge, to prepare a Report and
Recommendation (the "Report") as to whether the settlement
agreement was valid.  Judge Freeman's Report of August 27, 2009,
recommended that the putative agreement not be enforced.  This
Court then adopted that recommendation.  See October 1 Opinion,
2009 WL 3170098.  The City Defendants filed their motion for
judgment on the pleadings on November 16, 2009, which became
fully submitted on February 5, 2010.

DISCUSSION

Under Federal Rule of Civil Procedure 8(a), a complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).  The Rule 8(a) pleading standard "does not require
detailed factual allegations," but "[a] pleading that offers
labels and conclusions or a formulaic recitation of the elements
of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S.
__, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

5

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In deciding a Rule 12(c) motion, the court must "apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."  Hayden v. Paterson, 594 F.3d 150, 157 n.4 (2d Cir. 2010) (citation omitted).[6]  "To survive a Rule 12(c) motion, [Valez's] 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Id. at 160 (quoting Iqbal, 129 S. Ct. at 1949).  "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  Id. at 161 (quoting Iqbal, 129 S. Ct. at 1949).

To sustain a cause of action under 42 U.S.C. § 1983, Valez must show that he "was deprived of 'rights, privileges, or immunities secured by the Constitution and laws [of the United

---

[6] The City Defendants attach certain additional materials to their motion for judgment on the pleadings.  In deciding the motion, this Court has considered only the Amended Complaint and state court records whose authenticity is not in dispute.  See Scherer v. Equitable Life Assurance Soc'y, 347 F.3d 394, 402 (2d Cir. 2003) (stating that a court may take "judicial notice of state court records"); Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002) (explaining that courts may choose between excluding material extraneous to the complaint and deciding the motion as one for summary judgment).

States]'" by a person acting under color of state law.  Burg v.
Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (quoting 42 U.S.C. §
1983).  "Section 1983 is only a grant of a right of action; the
substantive right giving rise to the action must come from
another source."  Singer v. Fulton County Sheriff, 63 F.3d 110,
119 (2d Cir. 1995).  Therefore, "the first step in any § 1983
claim is to identify the specific constitutional right allegedly
infringed."  Pabon v. Wright, 459 F.3d 241, 252-53 (2d Cir.
2006) (citation omitted).  Valez's § 1983 claim references a
deprivation of his Fourth, Eighth, and Fourteenth Amendment
rights, but the Amended Complaint does not characterize those
deprivations in terms of specific causes of action.  The parties
agree, however, that the Amended Complaint purports to allege
claims of false arrest and malicious prosecution.  Each of these
claims is addressed in turn.

## I.   False Arrest

A § 1983 claim for false arrest "derives from [the] Fourth
Amendment right to remain free from unreasonable seizures, which
includes the right to remain free from arrest absent probable
cause."[7]  Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006).
Allegations of unconstitutional false arrest are analyzed by

---

[7] The Fourth Amendment "applies to the states through the
Fourteenth Amendment."  Bryant v. City of N.Y., 404 F.3d 128,
136 (2d Cir. 2005) (citing Mapp v. Ohio, 367 U.S. 643 (1961)).

"look[ing] to the law of the state in which the arrest occurred." Id. (citation omitted). The elements of a false arrest claim under New York law are: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003) (citation omitted); see also Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).

The City Defendants do not dispute that Valez was arrested, and thus, the only question to be resolved is whether the arrest was supported by probable cause. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . under § 1983." Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted).

The requirement of probable cause does not create a high bar for law enforcement. "Probable cause exists when, based on the totality of circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Finigan v. Marshall, 574 F.3d 57, 62 (2d Cir. 2009) (citation omitted).

"[W]here there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007).  The court's probable cause inquiry is objective; it focuses on "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly, 439 F.3d at 153.  Whether a plaintiff was eventually acquitted of the charges against him is also not relevant to the probable cause determination.  See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("[T]he mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

Plaintiff was arrested on suspicion of criminal possession of marijuana in the first, second, and third degrees.  "A person is guilty of criminal possession of marihuana . . . when he knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than" a specific quantity.[8]  N.Y. Penal Law §§ 221.20, 221.25 & 221.30.

Plaintiff's false arrest claim must fail because the

---

[8] Third-degree criminal possession of marijuana requires proof of "an aggregate weight of more than eight ounces"; second-degree possession requires sixteen ounces; and first-degree possession requires ten pounds.  N.Y. Penal Law §§ 221.20, 221.25 & 221.30.

Amended Complaint, on its face, alleges facts that demonstrate probable cause for the plaintiff's arrest.  The Amended Complaint alleges that Valez's landlords contacted the police; gave them Valez's address, name, and description; and informed them that Valez possessed marijuana.  The plaintiff alleges that his resulting arrest "would not have occurred but for the acts of [the landlords]."[9]

It is a well-settled principle that "information gleaned from informants can be sufficient to justify the existence of probable cause."  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006).  "[A] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity."  Id. (citation omitted).  "[I]nformation provided by an identified bystander

---

[9] Plaintiff's proposed second amended complaint, which is attached to an affidavit putatively signed electronically by Valez, tells a different story.  In the proposed amended complaint, the plaintiff drops his allegation that the landlords were responsible for having him arrested, and instead alleges that "an unidentified party called the 49 precinct" to report him.  In opposition to the City Defendants' motion, plaintiff now takes the position that "the [C]ourt need not accept this 'fact'" -- that is, Valez's factual allegation that the landlords were the ones to report him to the police -- "as it is [in] an unsworn complaint."  Plaintiff further asserts that the parties should ignore any inconsistencies that may be found between Valez's deposition testimony and the newly submitted affidavit.  These attempts to abandon the Amended Complaint's allegations are improper and only serve to underscore the lack of plausibility to plaintiff's claims.  Instead, the facts as alleged in the Amended Complaint will be taken as true.

with no apparent motive to falsify has a peculiar likelihood of accuracy, and . . . an identified citizen informant is presumed to be reliable." Id. (citation omitted); see also Caldarola v. Calabrese, 298 F.3d 156, 163 (2d Cir. 2002).[10]

Plaintiff alleges that the arrest was improper because "[Dilisio] had never even met the complaining witnesses and merely took an unsworn statement from someone that is merely identified as a witness [on the arrest report]." Plaintiff asserts that Dilisio's failure to "speak to, and take statements, from available neutral witnesses to the occurrence" prior to carrying out the arrest "deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures." Plaintiff even appears to suggest that, before any police officer may effect an arrest, the police officer must either obtain "a sworn complaint from a victim of [the] crime" or multiple written statements "from other available eyewitnesses."

---

[10] To be sure, Valez does allege that the landlords had a personal motive for seeking his arrest. Valez claims that he had "report[ed] the landlord[s] for their illegal apartment," and that the landlords consequently acted "[i]n retaliation" against him. The Amended Complaint does not plausibly allege, however, that Dilisio had been aware of the landlords' dispute with the plaintiff, nor of any other "apparent motive to falsify," at the time that Dilisio made the arrest. At best, Valez faults Dilisio only for "ignor[ing] evidence that showed there was no probable cause to arrest plaintiff" -- "evidence" which Valez does not identify or describe.

Plaintiff's assertions have no merit.  The law simply does not impose rigid procedural requirements in order for a police officer to conclude that there is probable cause for an arrest.  By asserting that the police must conduct an exhaustive investigation before they may conclude that probable cause exists, the plaintiff conflates the role of law enforcement with that of the judicial system.  "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.  Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence."  Finigan, 574 F.3d at 63 (citation omitted).  Plaintiff's repeated protestations that he did not "own or control" the marijuana plants likewise do not suffice to defeat probable cause.  An arrestee's claim of innocence at the time of his arrest does not vitiate probable cause, nor does the "officer's failure to investigate" that claim.  Panetta, 460 F.3d at 395-96.

Finally, insofar as plaintiff alleges in opposition that Dilisio "conspired with [Valez's] landlords to have him unlawfully arrested and prosecuted," the Amended Complaint fails to state a plausible claim for conspiracy.  The Amended Complaint does not allege facts suggesting that Dilisio and the landlords had any "meeting of the minds" or "intent to

conspire."[11]  Dahlberg v. Becker, 748 F.2d 85, 93 (2d Cir. 1984).
The Amended Complaint alleges merely that the police arrested
Valez "on orders of plaintiff's landlord"; that Dilisio failed
to fully investigate the landlords' accusation; that "defendants
agreed to have plaintiff arrested" (stated alternatively as
"[t]hey also jointly agreed to have plaintiff arrested"); and
that "all the parties knew plaintiff did not own, nor control in
fashion [sic]" the marijuana plants in Valez's backyard.[12]  These
assertions amount to no more than conclusory allegations.  A
complaint does not suffice if it only "tenders naked assertions
devoid of further factual enhancement."  Iqbal, 129 S. Ct. at
1949 (citation omitted).  Because it cannot be reasonably
inferred from the vague and conclusory statements in the Amended
Complaint that Dilisio acted in conspiracy with the landlords,
plaintiff's false arrest claim against Dilisio fails.

---

[11] Valez's allegation fails here for substantially the same
reasons outlined in the Court's prior Opinion dismissing
plaintiff's claims against the landlords.  See December 16
Opinion, 2008 WL 5329974, at *3.

[12] Plaintiff does not clarify whether the terms "they" or
"defendants" are meant to include Dilisio.  In an adjoining
paragraph within the Amended Complaint, plaintiff uses the term
"defendants" in a manner that clearly includes only the
landlords.  Moreover, in his opposition papers, Valez states
unequivocally that "[Dilisio] had never even met the complaining
witnesses" prior to the arrest -- a concession which renders the
allegation of a preexisting conspiracy even more implausible.

## II.  Malicious Prosecution

Plaintiff also seeks relief under § 1983 based on a claim
of malicious prosecution.  "In order to prevail on a § 1983
claim against a state actor for malicious prosecution, a
plaintiff must show a violation of his rights under the Fourth
Amendment, and establish the elements of a malicious prosecution
claim under state law."  Roberts v. Babkiewicz, 582 F.3d 418,
420 (2d Cir. 2009) (per curiam) (citation omitted).  "Malicious
prosecution occurs when (1) the defendant initiated a
prosecution against plaintiff, (2) without probable cause to
believe the proceeding can succeed, (3) the proceeding was begun
with malice, and (4) the matter terminated in plaintiff's
favor."  Cameron v. City of N.Y., __ F.3d __, 2010 WL 811304, at
*9 (2d Cir. Mar. 10, 2010) (citation omitted).  In the context
of a malicious prosecution claim, probable cause refers to "such
facts and circumstances as would lead a reasonably prudent
person to believe the plaintiff guilty."  Boyd v. City of N.Y.,
336 F.3d 72, 76 (2d Cir. 2003).[13]

"The absence of probable cause is an essential element of a
claim for malicious prosecution" under New York law, McClellan

---

[13] In addition, a plaintiff must demonstrate "that there was a
sufficient post-arraignment liberty restraint to implicate the
plaintiff's Fourth Amendment rights."  Rohman v. N.Y. City
Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  Being
compelled to stand trial suffices as a cognizable post-
arraignment restraint.  Jocks v. Tavernier, 316 F.3d 128, 136
(2d Cir. 2003).

v. Smith, 439 F.3d 137, 145 (2d Cir. 2006), and the plaintiff

bears the burden of proving "that there was no probable cause

for the criminal charge" on which he was prosecuted.  Rothstein

v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004).  Moreover, if the

plaintiff had been indicted by a grand jury, such indictment

"gives rise to a presumption that probable cause exists and a

claim for malicious prosecution in relation to the crimes

described in the indictment thereby is defeated."  McClellan,

439 F.3d at 145; see also Rothstein, 373 F.3d at 282-83.  That

presumption can be rebutted only by a showing that "the

indictment was produced by fraud, perjury, the suppression of

evidence or other police conduct undertaken in bad faith."

McClellan, 439 F.3d at 145 (citation omitted); see also Savino

v. City of N.Y., 331 F.3d 63, 73 (2d Cir. 2003) ("[I]t is the

plaintiff who bears the burden of proof in rebutting the

presumption of probable cause that arises from the

indictment.").

Plaintiff's malicious prosecution claim fails for several

reasons.  First, his prosecution on drug charges, although

ultimately unsuccessful, was supported by probable cause.  Valez

has not alleged that any new evidence came to light that caused

the probable cause to dissipate.  "In order for probable cause

to dissipate, the groundless nature of the charge must be made

apparent by the discovery of some intervening fact."  Kinzer v.

15

Jackson, 316 F.3d 139, 144 (2d Cir. 2003) (citation omitted).
Without any factual allegations supporting the vitiation of
probable cause, there can be no deprivation of any
constitutional right, and therefore no § 1983 claim.[14]

Second, Valez's malicious prosecution claim also fails with
respect to the element of initiation.  Under New York law,
"initiation" is a "term of art."  Rohman, 215 F.3d at 217.  To
constitute initiation, "it must be shown that defendant played
an active role in the prosecution, such as giving advice and
encouragement or importuning the authorities to act."  Id.
(citation omitted).  "One who does no more than disclose to a
prosecutor all material information within his knowledge is not
deemed to be the initiator of the proceeding."  Id. (citation
omitted).  Other than alleging that Dilisio arrested Valez,
plaintiff has not pled that Dilisio took any steps to "initiate"
Valez's prosecution on drug charges.

Finally, Valez's claim fails with respect to the element of
malice.  Malice requires showing "a wrong or improper motive,
something other than a desire to see the ends of justice

_____

[14] Valez has also not alleged any conduct that would rebut the
presumption created by the grand jury indictment.  To the extent
Valez alleges that Dilisio "[did] not ma[k]e a complete and full
statement of facts" to prosecutors, plaintiff's pleading
consists of "mere 'conjecture' and 'surmise'" that would not be
"sufficient for a reasonable jury to find that his indictment
was procured as a result of police conduct undertaken in bad
faith."  Savino, 331 F.3d at 73 (citation omitted).

16

served." <u>Fulton v. Robinson</u>, 289 F.3d 188, 198 (2d Cir. 2002)
(citation omitted).  Valez has "adduced no evidence from which
it could be inferred that the prosecution was commenced out of
any motive other than a desire to serve the ends of justice."
<u>Id.</u>  Consequently, Valez's claim for malicious prosecution must
be dismissed.

### III. Municipal Liability

Plaintiff also asserts a § 1983 claim against the City,
alleging that the City "as a matter of policy and practice," and
"with deliberate indifference," "failed to properly sanction or
discipline the defendants" for their violations of Valez's
constitutional rights.  "Section 1983 'imposes liability on a
government that, under color of some official policy, 'causes'
an employee to violate another's constitutional rights.'"  <u>Okin
v. Village of Cornwall-on-Hudson Police Dep't</u>, 577 F.3d 415, 439
(2d Cir. 2009) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S.
658, 692 (1978)).  "To prevail against a municipality on a
§ 1983 claim, a plaintiff must demonstrate both an injury to a
constitutionally protected right and that the injury was caused
by a policy or custom of the municipality or by a municipal
official responsible for establishing final policy."  <u>Hartline
v. Gallo</u>, 546 F.3d 95, 103 (2d Cir. 2008) (citation omitted).
<u>Monell</u> liability may spring from a single action, as long as the

conduct causing the violation was undertaken pursuant to a city-wide custom, practice, or procedure.  See, e.g., Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125-26 (2d Cir. 2004).

Plaintiff's § 1983 claim against the City requires him to prove an underlying violation of his rights.  Hartline, 546 F.3d at 103.[15]  Since he has failed to allege any violation of his rights under federal law, his claim against the City must be dismissed as well.  "[A] municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights."  Curley, 268 F.3d at 71; see also Matican v. City of N.Y., 524 F.3d 151, 154 (2d Cir. 2008).

IV.  Leave to Amend

In his opposition papers, plaintiff requests leave to further amend and attaches a proposed second amended pleading. Rule 16 provides that a district court may enter a scheduling order that limits the time to amend the pleadings, and Rule 16(b)(4) provides that "[a] schedule may be modified only for

---

[15] Under certain circumstances, a municipality may be held liable even if an individual defendant is not.  For example, a municipality may still be held liable where "the injuries complained of are not solely attributable to the actions of named individual defendants," Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 349-50 (2d Cir. 1999), or where claims against named individuals were dismissed without reaching the merits because the individuals are protected by qualified immunity.  See Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001).  Such circumstances are not present here.

good cause and with the judge's consent."  Fed. R. Civ. P. 16.

Rule 16 is designed in part to "assure[] that at some point both

the parties and the pleadings will be fixed."  Kassner v. 2nd

Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007)

(citation omitted).  Thus, "[o]nce the deadline for amendment in

a scheduling order has passed, leave to amend may be denied

where the moving party has failed to establish good cause."

Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d

244, 267 (2d Cir. 2009) (citation omitted).  "A finding of 'good

cause' depends on the diligence of the moving party."  Id.

(citation omitted).  Plaintiff does not assert that good cause

exists or otherwise explain the basis for making this request.

The proceedings in this case have been subject to Rule 16

pretrial scheduling orders since August 2008.  An August 11,

2008 Order directed that "[n]o additional parties may be joined

or pleadings amended after September 5, 2008."  A revised

pretrial scheduling Order issued on January 22, 2009, reiterated

that "[t]he deadline for filing amended pleadings in this action

was September 5, 2008."  Thereafter, plaintiff was permitted to

file the Amended Complaint in January 2009 as to the City

Defendants only.  Given that more than eighteen months have now

elapsed since the deadline for amending the pleadings, plaintiff

will not be given another opportunity to cure.  His application

for leave to amend is denied.[16]

V.   State Law Claims Against the City Defendants

As there are no longer any federal claims against the City Defendants in this suit, it is within the Court's discretion whether to exercise supplemental jurisdiction over Valez's remaining claim under state law, including his claims of intentional infliction of emotional distress, negligence, negligent hiring and retention of employees, and false arrest under Article I, Section 12 of the New York Constitution.  Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262-63 (2d Cir. 2006).  "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  Id. at 262. Accordingly, the Court declines to exercise supplemental jurisdiction.  Therefore, the Court need not address the City Defendants' argument that plaintiff's state-law claims are barred by plaintiff's failure to comply with New York State General Municipal Law.

---

[16] Although unnecessary to the Court's decision, it is also apparent that the proposed second amended pleading would not address the deficiencies outlined above.  Instead, the proposed pleading revises the factual allegations included in the previous pleadings by rendering those allegations even more vague and conclusory.

VI.   "Jane Doe" and "John Doe" Defendants

Ten "Jane Doe" and "John Doe" defendants were originally named in this lawsuit.  The time for service of these defendants having run no later than August 22, 2008, and the plaintiff having failed to offer proof of service, these defendants are dismissed from this lawsuit pursuant to Federal Rule of Civil Procedure 4(m).

CONCLUSION

The City Defendants' November 16, 2009 motion to dismiss is granted.  The Clerk of Court shall enter judgment for the defendants on all federal claims.  The state law claims are dismissed without prejudice to refiling in state court.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          April 12, 2010

_____
DENISE COTE
United States District Judge

21